OPINION
{¶ 1} Lawrence A. Hurd was found guilty by a jury in the Montgomery County Court of Common Pleas of four counts of rape and one count each of abduction, kidnapping, and grand theft of a motor vehicle. He was sentenced to an aggregate term of ten years in prison. Hurd appeals from his conviction. *Page 2 
 {¶ 2} The charges against Hurd arose from incidents involving two women in early June 2005. Both women were acquainted with Hurd through their drug usage and alleged that Hurd had forced them to have sex with him in the course of seeking out and using crack cocaine with him. One of the women also alleged that Hurd had stolen her car.
 {¶ 3} Hurd's first assignment of error challenges the weight and sufficiency of the state's evidence against him on the rape offenses. He contends that there was insufficient evidence of force and that his convictions must be overturned.
 {¶ 4} "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."State v. Thompkins (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence is to determine "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492, paragraph two of the syllabus. When reviewing the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, 78 Ohio St.3d at 387, citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288. A judgment should be reversed as *Page 3 
being against the manifest weight of the evidence only in exceptional circumstances. Martin, 20 Ohio App.3d at 175.
 {¶ 5} Careful review of the testimony of the two victims establishes that the convictions were supported by sufficient evidence and were not against the manifest weight of the evidence.
 {¶ 6} The first victim, Mary, testified that she received a Social Security Disability check on June 1, 2005, and used some of the money to buy crack cocaine. In the course of buying crack and finding places to smoke it over the next couple of days, she hooked up with another woman, "Sarah," and with Hurd. Mary stated that Hurd made sexual overtures to the women the whole time that they were together, but that she did not "wanna have anything to do with getting * * * sexual encounters * * *. I lose my desire whatsoever for sex" when using crack. On June 3, the threesome went to a park to smoke crack, and Hurd asked Sarah to "take a walk." When Sarah left, Mary again rejected Hurd's sexual advances, whereupon he became angry and verbally abusive. He grabbed the back of her head and neck and forced her to perform fellatio, which made her gag and get sick to her stomach. Mary's reaction made Hurd angry, and he said "he might as well take it * * * from [her]." Hurd then "jerked" her legs toward him on the car seat and pulled her pants and underwear off. According to Mary, Hurd tried to put his fingers in her anus and then raped her vaginally with his penis. She testified that she had struggled at first but was scared and afraid that she would get hurt; she "gave in" to get it over with and so that he would leave her alone. Sarah came back shortly thereafter. Mary remained with Hurd for awile because she had no means to get away. Later, after they had returned to a house on Reist Avenue, Mary managed to take keys away from Hurd and to leave with Sarah in Sarah's car. Mary *Page 4 
went to the hospital and reported the incident to the police.
 {¶ 7} The second victim, Sherry, decided to get some crack cocaine on her way to work on June 7. She went to a house on Reist Avenue to buy crack. At that house, Hurd approached Sherry's car, acted as if he knew her, and offered to help her get some drugs. Hurd got into the car and directed Sherry to another house. Hurd bought some crack cocaine and smoked it with Sherry. Once Sherry realized she was late for work, she decided to take a sick day. She let Hurd drive her car to get more crack, and she testified that he would not give her car keys back to her throughout the day, despite her efforts to retrieve them. When Sherry asked for her keys, Hurd took it as a sign of disrespect. When they arrived at another house, Hurd took Sherry into a bedroom, saying that he wanted to talk in private. Sherry was becoming fearful at this point. In the bedroom, Hurd asked Sherry to pull her pants down, but she refused. He then ordered her to "pull `em down" and said that he wanted to "fuck" her. Hurd vaginally raped Sherry while holding her by the wrists. She did not scream because she felt there was no one to help her, and she did not fight back because she was afraid of getting hurt. Sherry stated that she could have run out of the house after the rape, but she did not do so because she did not know where she was. Hurd then drove Sherry to an apartment building, where he left her car, and walked a few blocks with her. Throughout this time, Hurd got very angry when Sherry asked about taking her car. Eventually, Hurd took Sherry to a bus stop. She took a bus to a hospital, and the police were summoned. Sherry rode around the neighborhood with the police to look for her car, whereupon they found Hurd and the car. She then went to the hospital for an exam.
 {¶ 8} Portions of the victims' stories were corroborated by other witnesses and *Page 5 
evidence. The nurse who examined Mary testified that Mary had reported oral, vagina, and anal penetration, that she had observed and collected protein stains on Mary's thighs, and that she had observed general redness near Mary's cervix. The nurse who examined Sherry testified that she had observed bruises on Sherry's wrist, a stain on her thigh, and a laceration near the opening of her cervix. The fluids collected from the two rape examinations were subsequently determined to be Hurd's semen.
 {¶ 9} Hurd claims that his three convictions of rape against Mary and one count of rape against Sherry were not supported by the evidence. Although Hurd cites some testimony in which Sherry admitted that she had not fought with Hurd during their sexual encounter, it is clear from the context of this testimony that she did not willingly have intercourse with him . Likewise, Mary's testimony established that she did not engage in sexual conduct with Hurd of her own volition. Based on the victims' testimony, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Moreover, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in reaching its conclusions. As such, Hurd's convictions were neither against the manifest weight of the evidence nor supported by insufficient evidence.
 {¶ 10} The first assignment of error is overruled.
 {¶ 11} Hurd's second assignment of error asserts that his sentence was arbitrary, capricious, and excessive. He cites State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, extensively, although he has not alleged any violation of Foster, and we see no evidence of aFoster issue in the record. His argument seems to be that, in light of the greater discretion that trial courts exercise in light ofFoster, appellate courts must play a greater role in safeguarding the rights of defendants. He also claims that his sentence was *Page 6 
"excessive," "harsh," and "inconsistent."
 {¶ 12} Hurd has not advanced any specific argument in support of his claim that his sentence was excessive, arbitrary, capricious, harsh, or inconsistent. Each of the rapes was a felony of the first degree, and Hurd could have received up to ten years in prison on each. R.C. 2907.02(B); R.C. 2929.14(A)(1). He received only five years on each count. Pursuant to the trial court's sentence, the three counts of rape involving Mary were to be served concurrently, but consecutive to the count of rape against Sherry, for an aggregate term of ten years. Abducting Mary was a felony of the third degree, R.C. 2905.02(B), for which he could have been sentenced to a maximum of five years of imprisonment. The trial court imposed a four year term to run concurrently with the sentences for Mary's rape. Kidnapping Sherry was a felony of the first degree, for which Hurd could have been sentenced to a maximum of ten years of imprisonment. R.C. 2905.01(C); R.C. 2929.14(A) (1 ). The trial court sentenced Hurd to five years, to be served concurrently with the sentence for Sherry's rape. Finally, grand theft of a motor vehicle is a felony of the fourth degree. R.C. 2913.02(B)(5). Hurd received the maximum sentence of eighteen months for this offense, R.C. 2929.14(A)(4), but this sentence also ran concurrently with the rape and kidnapping sentences.
 {¶ 13} Hurd did not receive a particularly harsh sentence. For all of the rape offenses, his sentence was significantly less than the maximum allowable term. Moreover, by running several of the sentences concurrently, the trial court's aggregate term did not exceed the sentence that Hurd might have received for only one count of rape. In our view, this sentence was not excessive, arbitrary, or capricious.
 {¶ 14} The second assignment of error is overruled. *Page 7 
 {¶ 15} The judgment of the trial court will be affirmed.
 BROGAN, J. and DONOVAN, J., concur. *Page 1